Fisk *v.* Wilber.

---

---

7 395<br>
59h 278<br>
7 395<br>
74h 17<br>
7b 395<br>
78 AD¹891

**SAME TERM.** *Before the same Justices.*

**FISK *vs.* WILBER and others.**

Courts of equity have concurrent jurisdiction with courts of law in cases of private nuisance. But it is not every case of nuisance which will authorize the exercise of the jurisdiction.

It rests upon the principle of a clear and undoubted right to the enjoyment of the subject in question; and will only be exercised in a case of strong and imperious necessity, or where the rights of the party have been established at law.

It is not the peculiar province of a court of equity to construe contracts, and conveyances of water powers, or to ascertain and define the quantity of water granted or reserved thereby.

The principle upon which the jurisdiction of a court of equity rests, in cases of water privileges, arises from the preventive remedy which it can afford, in shielding a party from great and irreparable injury which may threaten him. But the rights alledged to be infringed or threatened must be clear, definite, and certain, or capable of being clearly ascertained; otherwise the party should be left to his remedy at law.

In grants of water privileges, where the construction is doubtful, that interpretation should be preferred which will give to the grantee a right to an unrestricted, rather than to a limited, use of the quantity granted.

Where a grant of a water power specifies the quantity of water to be used, and the mills and machinery to be operated thereby, but the grantee is not confined,

Fisk *v.* Wilber.

in terms, to the use of the mills, &c. particularly specified, the grant will not be construed as restricting the grantee, in the use of the water conveyed, to the particular mills and machinery mentioned in the conveyance.

If the grantee of a water power is not restricted, by the terms of his grant, in regard to the objects to which the same is to be applied, he may apply such water power to any kinds of mills or machinery which his interest may dictate; even though the grantor may own machinery of the same kind, with which the grantee's will come in competition.

No such restriction can be *implied* from the fact that, at the time of the grant, the parties were tenants in common of the water power, and of the mills propelled thereby.

Where the respective rights of persons owning a water power rest in grant, and not in covenant; the right of each party to use the water not being in terms made a condition of the grant, and there being no provision made for the effect of a forfeiture; it will be held that the parties intended their rights under the deed should be fixed and vested, at the time of delivery, and not liable to fluctuate and vary according to future events.

In Equity. This was a rehearing of a cause decided at a special term by Gridley, Justice. The bill was originally filed in the court of chancery, before the vice chancellor of the fifth circuit. The object of the bill was to ascertain, settle and establish, by a decree of the court, the rights and privileges of the respective parties of, in, and to the waters and water privileges particularly described therein. The bill alledged that on the 1st of Jan. 1828, Lodowick and Samuel W. Brown were seised as tenants in common of certain lands, mills and water privileges in Plainfield, with a grist mill, oil mill, saw mill, clothing works and carding machine situated thereon. That on that day they executed a deed of partition of lands, mills, and water privileges, by which Lodowick took a portion of the land, and the saw mill, oil mill, yard, &c. and "so much of the waters to the use and operation of the said saw mill and oil mill which may or shall hereafter rise above the bottom of so much of the timber or plate as now remains upon the dam, now and at all times hereafter, excepting therefrom so much as shall be necessary for the operation of the said grist mill, and the said clothing and carding works." By the same deed S. W. Brown took the residue of the lands, with the grist mill and clothing works, and the undivided half of the carding works, &c. and " so much of the waters to the use and operation of the said grist mill and the said cloth-

ing and carding works which may or shall or does hereafter rise above the bottom of so much of the timber or plate as now remains upon the dam as shall be necessary for the operation of the same as aforesaid." And "to the use and operation of the said grist mill and the said clothier's works, and the said carding works all waters below the bottom of so much of the timbers or plate as now remains upon the dam, *exclusively.*" This deed provided that S. W. Brown should maintain 20 feet of the north end of the dam, and the flumes, and not permit any waste of water; and that L. Brown should maintain the remainder of the dam, and the flume belonging to him. It also provided that the parties should erect a stone monument, descriptive of the precise summit level of the bottom of the plate, as the dividing line of waters. The bill alledged that the parties severally entered into the possession of the portions assigned to them; that on the 1st of September, 1843, the plaintiffs contracted with Lodowick Brown to purchase a part of the premises, including the saw mill and water privileges, and took a deed and entered into possession, and had continued to occupy the same. That the consideration of such deed was $1500, the water privilege being valued at $1000. That the defendants had deprived the plaintiff of the use of the water, to a great extent, by keeping it below or at the bottom of the plate, except in time of freshets. That the rights and interests of S. W. Brown were vested in the defendants and were occupied by them, who claimed to be the owners. That the defendants had erected and were operating a variety of other machinery not contemplated at the time of such partition, requiring large quantities of water; and had recently erected a saw mill, which they were operating to the plaintiff's injury. The bill further alledged that when partition was made the grist mill was used for custom business and not for flouring, and the clothing and carding works were used only during seasons of cloth dressing and carding wool, for customers and for family use. That no more water was granted to S. W. Brown than was necessary to work the grist mill, carding and clothing works as they had theretofore been used, &c. The bill also alledged that the plaintiff had frequently applied to the defendants to de-

Fisk *v.* Wilber.

sist from using the water to operate their increase of machinery, and to confine their use of the water to the grist mill, carding and clothing works as originally intended. That sometimes the defendants admitted that the plaintiff had some right to the water, but insisted that it depended upon the will of the defendants; and that they might waste, or use as much for other purposes as would run the grist mill, carding and clothing works constantly, and that they might add to the business requiring water power equal to the grist mill, carding and clothing works, and alternate so as to use the water constantly, and deprive the plaintiff of the use of it. The plaintiff charged that he was entitled to so much of the water for his saw mill and oil mill, and which rises above the bottom of the plate, except so much as is necessary for the operation of the grist mill and clothing and carding works doing custom business, and not as a flouring mill, operating day and night. And he insisted that the defendants had no right to waste the water, nor to add machinery requiring water power, to be used alternately with the grist mill, &c. And the prayer of the bill was that the plaintiff's rights and privileges of and in the water be partitioned, and the rights and privileges of the defendants thereto, might be ascertained, settled and established by the decree of the court; and that the defendants might be decreed to permit the plaintiff to enjoy his rights; and that they might be restricted to such use thereof as justly, legally and equitably belonged to them by virtue of the partition; that the defendants might be decreed to account with the plaintiff for the loss and damage occasioned by their improper use of the water; and for an injunction, &c.

The defendants put in an answer, admitting most of the facts stated in the bill, but denying that the rights of the parties was as claimed by the plaintiff. They alledged that S. W. Brown died in 1832; that on the 29th of December, 1835, Joseph Wilber, one of the defendants became seised of the interest of S. W. Brown, and continued seised till 8th December, 1842, at which time the other defendants became seised. That Joseph Wilber, while owner, greatly improved the construction of the wheels, so as to require less water; and they claimed the right to use the

water thus saved, to carry other machinery ; that there was always a surplus of water, in 1828, and before, and still is, and that the defendants are interested in the surplus water to carry any other machinery ; and they averred that the parties were and are not restricted in the use of the water to any particular kind of machinery. They denied that they had deprived the plaintiff of the use of water by keeping it below the plate ; and claimed the right to use the water assigned to S. W. Brown, and a share of the surplus water to any lawful purpose, and they averred that more grinding was done in 1828 than at the present time. That water power sufficient to carry mills as then constructed was granted, not depending on the business to be done. And they insisted that they had not used as much water as before the new machinery was erected in 1828. They also stated that after the partition L. Brown erected a saw mill with two saws and two wheels, and distinct gearing, and two wheels to carry back the carriages ; and a shingle mill, and a variety of machinery to be carried on by water power, viz. buzz saw, turning lathe and grindstone, which were operated at the same time with the other mills. They denied that there was any doubt about the rights of the parties, and insisted that the plaintiff had an adequate remedy at law. They averred that there was a great surplus of water every year, and that the parties have a right to use it.

A replication was filed, and proofs were taken ; and upon the hearing at the special term the bill was dismissed, with costs. Whereupon the plaintiff moved for, and obtained, a re-hearing.

*C. P. Kirkland,* for the plaintiff.

*J. Ruger,* for the defendants.

*By the Court,* PRATT, J. We have recently had occasion to examine into the power of a court of equity to grant relief in cases of this kind, and to inquire under what circumstances the court will interpose by injunction. (*Olmsted* v. *Loomis,* 6 *Barb. S. C. R.* 152.) We said in that case that it was well

established that courts of equity had concurrent jurisdiction with courts of law in cases of private nuisance, but that it was not every case of that kind which would authorize the exercise of such jurisdiction. (*Angell on Water Courses,* 174. *Eden on Inj.* 269. 2 *John. Ch. Rep.* 282. 6 *Id.* 19. 4 *B. & C.* 8.) It rests upon the principle of a clear and undoubted right to the enjoyment of the subject in question ; and will only be exercised in a case of strong and imperious necessity, or when the rights have been established at law. In case of an injunction, the necessity that the subject matter should be capable of being clearly ascertained is most obvious, in order that the mandate of the court may be certain, and without ambiguity ; that what the defendant is commanded to do or not to do may be certain and definite. (*Ripon* v. *Hobart,* 3 *Mylne & Keen,* 169.

It is no part of the peculiar powers of a court of equity to construe contracts, or to ascertain the damages to which a party may be entitled in consequence of a breach thereof. These subjects, alone, would not confer jurisdiction. The principle upon which jurisdiction rests, in cases of water privileges, is contained in the preventive remedy which a court of equity can afford, to shield a party from some great and irreparable injury which may threaten him. But the rights in question must be capable of being clearly ascertained, in order that the decree of the court may be obeyed with safety by the party against whom it is directed.

In this case the bill may, and probably does, disclose a case within the equitable powers of the court, provided the construction which the plaintiffs give to the original partition deed be correct. The bill is based upon the assumption that the original deed restricted each party thereto, in the use of the water, to the particular mills mentioned therein ; alledging that the defendants have diverted the water to other uses, and applied it to propelling other kinds of mills and machinery. It then prays that *the rights of the parties in relation to the use of the water may be established, and that the defendants may be restricted to such use thereof as they may be found entitled to.* If the plaintiffs are right in their construction of the original deed of

Fisk *v.* Wilber.

partition, there would be no difficulty in restraining the defendants from diverting the water to other uses. The subject of the restriction would be certain and definite. But if they are wrong in such construction—if the parties are not restricted by that deed to any particular use of the water—if the mills are only mentioned therein as a convenient measure of quantity, a very different case is presented. It then becomes a mere question for the court to determine, in the first place, how much water the defendants are entitled to use; and secondly, how much they have in fact used. These are questions upon the pleadings and proofs in this cause extremely difficult to solve. How are we to ascertain the exact quantity of water to which each party is entitled, so that an injunction may be safely decreed, so that the mandate of the court shall be certain. Suppose we should be satisfied that the defendants had used more water than they were entitled to use: Without being able to ascertain the excess, how shall we prevent them from repeating the injury ? An injunction which should merely command them to desist from using more than their just proportion of water would be very difficult to enforce. It is therefore obvious that the court should only interpose by injunction in cases where the subject of it is clear, definite, and certain.

We have felt called upon to make these preliminary suggestions, as well because they may bear upon some of the questions hereafter examined as to correct what seemed to us an erroneous impression prevailing among the profession in relation to the powers of the court, in cases of this kind. From the number of cases presenting similar questions, which have come before us, there would seem to be an impression that it was the peculiar province of a court of equity to construe contracts and conveyances of water powers, and to ascertain and define the quantity of water granted or reserved thereby. We have only to say that the powers of courts of law are amply adequate to define the meaning of contracts; and we know of no peculiar fitness in a court of equity for gauging of water and measuring quantity to which the parties may be entitled, when the construction of the contract shall have been ascertained.

Fisk *v.* Wilber.

As a general rule, an approximation to correctness is all that can be attained; and the damages which a court of law has in its power to grant to the injured party, will generally be the safest remedy, and in most cases amply sufficient to protect the parties in the enjoyment of their rights. We repeat that the equitable powers of the court should only be invoked in a case where the subject is capable of being clearly ascertained, and then only to prevent great and irreparable injury.

The parties to this suit claim under the partition deed executed by Lodowick and Samuel W. Brown, in the year 1828; the plaintiff claiming under Lodowick, and the defendants under Samuel W. except as to one-half the carding machine and clothing works which were at the time owned by another person, and now belong to the defendants.

Two important questions arise upon the construction of this deed. *First.* Whether the parties to it are restricted in the use of the water to the particular mills mentioned therein; and *secondly.* If they are not so restricted, is there any restriction which limits the full and free right to apply the quantity to which each party is entitled, to any use, whether such use be injurious to the other party or not.

1. As to the first proposition, the counsel for the plaintiff conceded, upon the argument, that the parties were not restricted to the particular mills therein mentioned. And I give my views upon this point because the point is raised in the case, and also because a clear understanding upon this point may afford some assistance in coming to a correct conclusion upon the other point.

In grants of water privileges, where the construction is doubtful, that should be preferred which would give to the grantee a right to an unrestricted rather than to a limited use of the quantity granted; for such construction is more beneficial to the community, and to the grantee, and can seldom injure the grantor. (15 *Mass. Rep.* 313. 18 *Pick.* 268. 9 *N. Hamp. Rep.* 454. 6 *Id.* 22. 3 *Shep.* 440. 4 *Coke,* 86. 5 *Taunt.* 454. 1 *B. & Ald.* 258. *Angell on Water Courses,* The water powers furnished by the numerous streams country are rapidly increasing in importance and value.

of them are held by grants in which the mills and machinery most in use in the early settlement of the country are mentioned as the object to which the water is to be applied.   The purpose of the purchaser being to apply the water to that kind of mills or machinery, they would of course afford a convenient measure of the quantity of water intended to be conveyed; and hence almost all the early conveyances refer to saw mills, grist mills, and carding machines, and similar machinery.   If these grants are to be construed as restricting the use of the water conveyed, to the particular mills and machinery mentioned in the conveyance, as the business wants of the community change, very many of these water powers, would become utterly worthless.   And although it may be conceded that the grantees in many cases purchased with the intention of applying the water to the propulsion of the mills and machinery mentioned in his conveyance, and perhaps did not even advert to the future, when in the changed condition of the country they might become useless or unprofitable ; yet we can scarcely conceive, unless in some very special case, that the parties should have contemplated any other than the grant of an absolute and unqualified right to a given quantity of water.   If the parties intended to limit the use, they would be apt to employ such terms as would indicate such intention.

2. The parties to the partition deed were tenants in common of the premises, and as such had an absolute right to use the same as they pleased.   Their object seems to have been simply a partition of the premises.   Had the partition been made by commissioners, under the direction of the court, and had they used, in their description of the premises set off to each party, the same terms used in this deed, there could scarcely have been left room for a doubt as to the construction of the terms. But these parties manifestly had the same object in view, viz. to make a final division of the property ; and we can discover no reason why terms used by the parties in a voluntary partition should be construed differently from the same terms when used by commissioners in a report or record.

3. Again ; we can not conceive of any motive which the

parties could have had in restricting themselves in the free and unqualified use of the water. The partition was evidently intended to be permanent. If they intended to limit the application and use of the water they would have made some provision for the consequences of a misapplication or diversion; as there is no provision for any reversion of the estate, if the mills mentioned in the deed should become unprofitable; and if the parties are limited to those mills, in the use of the water, the whole water power must remain unemployed, and lost, for all practical purposes, to both parties. We can not for a moment suppose that the original parties contemplated any such restriction. Besides, they have shown that they did not, by the practical construction which they have themselves given to the instrument. Both parties have applied the water to uses not specified therein. We have no doubt, therefore, that the mills mentioned in the deed were simply used as a measure of quantity.

This, as we said before, the counsel for the plaintiff concedes. He concedes that the deed does not restrict the parties to the particular mills mentioned therein, but he insists that it restricts each party, in the use of the water, to such mills and machinery as shall not come in competition with, or injure the other party. This brings us to the examination of the second proposition above laid down; which was the main proposition relied on upon the argument, to sustain the plaintiff's case. If the proposition be correct it must grow out of the terms of the deed, or the relation which the parties sustain to each other.

I. We are utterly unable to find any support for the proposition from the terms of the deed. The deed contains language which might possibly be construed as limiting the use of the water to the mills mentioned therein; but if it be conceded that the parties are not limited to those mills, we are unable to find any limitation or restriction, except as to quantity.

II. Can any such restriction be implied from the relation which the parties sustain to each other? We can discover no greater reason for implying such restriction in this case than in any case where a water power is granted. It was urged that we could not suppose that either party intended to give to the

Fisk *v.* Wilber.

other the right to erect rival mills and machinery. The same might be said with equal pertinency in any other case. Yet we are not aware of any rule which precludes the grantee of a water power from applying such power to any machinery which his interest may dictate; although the grantor may happen to own machinery of the same kind. It is difficult to ascertain any principle upon which such a proposition can be based. The counsel himself was not able, upon the argument, to fix any very definite line which should limit such restriction. It was suggested that the party should be restricted from applying the water to rival machinery—assuming that such use would be injurious to the grantor. But this by no means follows, as a universal rule. It is not probable that the numerous flouring mills at Oswego and Rochester, or the cotton and woollen factories at Lowell, are injurious to each other. In a new country, where timber is abundant, saw mills upon the same stream and in the same neighborhood might be far from detrimental to each other. So that the mere fact that the mills are of the same kind does not determine the question of injury.

III. It must be borne in mind that the rights of the parties here rest in grant, and not in covenant. As the right of each party to use the water is not in terms made a condition of the grant, and there is no provision made for the effect of a forfeiture, we must conclude that the parties intended that their rights under the deed, whatever they were, should be fixed and vested at the time of delivery. But if we attach to the grant an implied condition that the water shall forever be applied to such use as shall not injure the grantor, or, in this case, injure each other, the rights of the parties can never be settled. They would be liable to vary and fluctuate as the business of the country should vary. The water might be used to propel rival machinery so long as such rivalry was not injurious to the other party. But if, from a change of the condition or business of the country, the rivalry should become injurious, the owner of the mills last erected must pull them down. The bare statement of such a proposition is sufficient.

IV. The authorities cited do not sustain any such proposition.

Fisk *v.* Wilber.

The citation from Kent manifestly refers to the general duties of riparian owners, toward each other. The case in 5 Conn. Rep. 210, is an authority, so far as it goes, directly in the teeth of the proposition contended for on the part of the plaintiff. In that case the court held, from the peculiar phraseology of the grant, that the use of the water was intended to be restricted to the particular mills specified therein; and one of the propositions of the learned judge who delivered the opinion of the court, in support of that construction of the instrument, was that if the use was not thus restricted there could be no restriction whatever, and hence rival machinery might be erected. It will therefore be seen that this is the converse of the doctrine urged on behalf of the plaintiff in this case.

V. The bill in this cause makes no such case as that contended for by the plaintiff. Courts of equity have always held strictly to the maxim *allegata et probata.* (*James* v. *McKernon*, 6 *John.* 543.) The bill proceeds upon the assumption that the deed of partition restricts each party to the mills specified therein. The plaintiff ought not to be permitted to set up an entire new case not made by the bill.

Upon the question whether the defendants have in fact used more water than was used by Samuel W. Brown, for the mills set off to him, it is not necessary to say much. We have already alluded to the principle upon which courts of equity take cognizance of cases of private nuisance, and have shown that neither the bill nor the evidence, as far as this particular point is concerned, presents a case within such principle. Besides, upon the merits, without going over the points examined in the opinion of the justice who heard this cause at special term, we concur in the conclusions at which he arrived. We are satisfied that the proofs do not establish the fact that more water is now used than was used at the time of the partition, for the mills set off to Samuel W. Brown; at least they do not show it sufficiently clear to warrant the interference of this court.

The decree made at the special term must therefore be affirmed, with costs of the rehearing.