### JOSEPH AGATE v. ABRAHAM LOWENBEIN AND OTHERS.

Where the plaintiff has an ample remedy at law for a breach of covenant, and the damages can be exactly ascertained, and no irreparable injury will be inflicted, and there is nothing which will give rise to a multiplicity of suits, the court will not interfere by injunction to compel the defendant to perform his contract specifically; but will leave the plaintiff to his remedy at law.

*So held*, in a case where the tenants of a house, holding under a lease covenanting against the use of the premises "for any business that would increase the hazard or rates of insurance," were alleged to have broken the covenant; and the plaintiff, the lessor, sought to have them restrained from continuing to use the premises for the purposes forbidden by the covenant.

In such a case, the increased rate of insurance would form an exact measure of damages which plaintiff could recover at law; and the insurance premiums being payable yearly, there could be no necessity for bringing suits for the daily breach of the covenant; so that there could not be a multiplicity of suits, and there would be no irreparable injury inflicted.

*Held, also,* that the injunction should be refused, on the ground that it did not clearly appear that the purposes for which the premises were used by the defendant were a violation of the covenant, as it is only, as a general rule, where the rights of the parties are, or can be clearly ascertained, and are free from

all reasonable doubt that the court will entertain jurisdiction in the first instance to restrain an act by injunction.

A demise was of the whole of one building and the three upper floors of the adjoining building, with the privilege of using the stairway of the latter building "for the carrying in and out of ashes, coal, &c." There was free access to and from the three floors of the latter building through the first building. *Held*, that the lessee had no right to use the stairway of the latter building except for the purpose stated in the lease, and an attempt to use it for any other purpose— *e. g.*, as the principal entrance to the floors above—would be restrained by injunction.

APPEAL from a decision of the court at equity term.

The plaintiff, by lease under seal, dated March 3, 1866, leased to Eugene Mendes "the whole of the building and premises known as No. 645 Broadway, in the city of New York, and also the three upper floors of No. 647 Broadway, in the said city, with the privilege of using the stairs of No. 647 Broadway for the purpose of carrying in or out ashes, coal, and so forth, with the appurtenances," for ten years from May 1, 1866, at the yearly rent of $11,500, payable quarterly.

In the lease Mendes covenanted "that he would not use the premises mentioned in his covenant for any business that would increase the hazard or rates of insurance, more than may be caused by the steam engine and boiler to be put in said premises by said Mendes."

At the time of executing the lease, and entering into possession under it, Mendes carried on the business of chocolate manufacturing. Mendes assigned his lease to one Kerstein, on December 20, 1866, and Kerstein assigned it to the defendants, Lowenbein and Morrison, on December 21, 1866.

Lowenbein and Morrison sublet the three upper floors of Nos. 645 and 647 to the defendants, Little, Rennie & Co., who carry on, in the fifth floors of both said Nos. 645 and 647, the business of type founders; and sublet the fourth floor of No. 647 to the defendants, Muller, Schmidt & Co., bookbinders; and the third floor of No. 647 to the defendants, McGee, Maddern & Co., book and job printers, who used the stairs of No. 647 for the passage of customers, and all customary ingress and egress to their place of business on the third floor, and put their signs on the stairs and over the entryway of No. 647.

The three upper floors of Nos. 645 and 647 opened into and communicated with each other when Mendes took the lease, and formed, each floor of each number, with its corresponding floor in the other number, one large floor with archways connecting.

On May 1, 1870, when the premises were used and occupied by the persons and in the manner above named, the insurance companies in which plaintiff insured the buildings Nos. 645 and 647, increased their rates of insurance on said buildings, by the addition of 50 cents per $100 on the usual rates. These increased rates were those regularly imposed by insurance companies for risks classed as " specially " hazardous. The buildings were, before May 1, 1870, rated at " extra " hazardous rates only. It was proved on the trial, that the increased rates imposed *after May* 1, 1870, *were on account of the bookbinding and job printing carried on there by defendants;* stereotyping, job printing and bookbinding being rated as specially hazardous by insurance companies. It was also proved that steam engines and boilers were rated either as extra hazardous or specially hazardous, according to the business in connection with which they were used, and in the discretion of insurance companies. That they were rated as specially hazardous in a majority of cases; and in a factory where chocolate was manufactured to a large extent, they would be rated as specially hazardous; if to a small extent, they would not be so rated. That one insurance company might regard it as special, another might not.

On these facts the plaintiff asked judgment: 1. Restraining the defendants from carrying on or conducting in the buildings 645 and 647 Broadway, or in any part thereof, the business of job printing or bookbinding, or any business which might increase the hazard more than was specified in the lease to Mendes; and, 2. Restraining the defendants from using or permitting to be used, the stairs of No. 647 Broadway, except for the purpose of carrying in or out ashes, coal, and so forth.

Upon the trial at equity term, before Judge JOSEPH F. DALY, judgment was given denying the first portion of the relief asked, but granting an injunction restraining McGee,

Maddern & Co. from using the stairs or entryway of No. 647 Broadway for any purpose, except to carry in or out ashes, coal, fuel, and necessaries generally, without reference to their business, and carry out wood, coal, fuel, and refuse necessary to their tenancy, without reference to their business.

From this judgment appeal was taken by the plaintiff, and also from so much thereof as was adverse to them, by McGee, Maddern & Co.

*C. Bainbridge Smith*, for appellant.

*H. Morrison*, for respondents.

By the Court.*—Daly, Ch. J.—There was no ground for equitable interference for the alleged breach of the covenant, that the premises were not to be used for any business that would increase the hazard or rates of insurance more than would be caused by the steam engine and boiler, for the reason that the plaintiff has an ample remedy at law. If the premises are so used, and the plaintiff has in consequence to pay an increased rate for the hazard of insurance, then the increased amount he has to pay for insurance is the exact measure of his damages for the breach of the covenant, and this he may recover in an ordinary action. Courts of equity interfere to prevent an injury that would be irreparable, or where, as the Vice-Chancellor said in *Steward* v. *Winters* (4 Sandf. Ch. 591), "it is manifest that the extent of the injury is difficult to be ascertained or measured in damages," or where, as in that case, a new cause of action would have arisen every day, by the continuance of the breach; for which reason a court of equity will lend its aid to prevent, or dispense with, a great number of actions. But this is not such a case. There is no difficulty in it in respect to the measure of damages. The covenant itself showing what the measure is to be, and as the premium upon fire policies is payable for the whole period upon the delivery of the policy (1 Phillips on Ins. 505), and in this city upon continuing policies annually, there was no ground for in-

terference to prevent multiplicity of suits. "The equitable remedy," says Adams, "is not concurrent with the legal one, and will not be substituted for the legal remedy, unless a particular necessity be shown" (Adams' Doctrine of Equity, 83), and no such particular necessity exists in this case.

Moreover, it is not for equitable interference sufficiently clear, upon the covenant and the evidence, whether the letting of the premises for the carrying on of the business of job printing, stereotyping and book binding, or for the manufacturing of chocolate, was a violation of the covenant; as it appears from the evidence, that steam engines are classed as extra or specially hazardous according to the business in which they are used. It may be urged that the "hazard" that, in the language of the covenant, may be caused by the steam engine, necessarily means the use of it in the building in connection with such trade or occupations as are ordinarily carried on in such places with the aid of an engine. I do not mean to say that in an action brought to recover damages for the breach of the covenant in which this question would have to be passed upon, the legal conclusion would, or ought to be, that the letting out of parts of the premises for the carrying on of these occupations, was no breach of the covenant. The conclusion might, and very possibly would, be the other way; but courts of equity are not called upon to construe contracts where the meaning is ambiguous, doubtful, or uncertain, unless it be in a case where their aid is invoked to arrest an irreparable injury, and the party has no other remedy (*Fisk* v. *Wilber*, 7 Barb. 395). It is, as a general rule, only where the rights of the parties are or can be clearly ascertained, and are free from all reasonable doubt, that the court will entertain jurisdiction in the first instance to restrain an act by injunction (*Snowden* v. *Noah*, Hopk. 353; *Olmsted* v. *Loomis*, 6 Barb. 164; *Bonaparte* v. *Camden*, &c. *R. R. Co.* 1 Bald. C. C. R. 218; *Brown* v. *Newall*, 2 Mylne & C. 570; 1 Story's Eq. Jurisp. § 959, b).

This disposes of the appeal on the part of the plaintiff. It now remains to consider the appeal from the injunction granted to restrain the defendants, McGee, Maddern & Co. from affixing their signs upon the stairway of the building No. 647; for if

they were not entitled to do this under the lease given by the plaintiff, the keeping of the signs there is a continuous trespass, which, as already suggested, will authorize equitable interference to prevent a multiplicity of suits.

. The demise was of the whole of the building known as No. 645, and the three upper floors of the one known as 647 Broadway, with the privilege of using the stairs of No. 647 for the purpose of carrying in or out ashes, coal and so forth. The buildings adjoin each other, and when the lease was granted the three upper floors of No. 647 opened into and were connected with the corresponding floors of No. 645. As there was, under this arrangement, free access to and from the three upper floors of No. 647, through and by the entrance and stairway of No. 645, it is very clear that the right to use the stairway and entrance upon the front floor of 647 was not granted, except for the purpose stated, the "*carrying in and out of ashes, coal and so forth.*" If the lessee could not, when the demise was made, have access to and from the three floors of 647, and the complete enjoyment, except by the use of the stairway and entrance on the first floor of the building, then a right of way by the stairway and entrance would of necessity, pass as incident to the grant (*Lifford's Case*, 11 Co. 52; *Holmes* v. *Seely*, 19 Wend. 507; *Doty* v. *Gorham*, 5 Pick. 487). But free access to these floors through the entrance and stairway of 645 was provided from the way in which the buildings were arranged, and the qualified right granted in respect to the stairway and entrance of 647 shows very plainly what was intended: that he was to have the right to use the latter for a particular purpose, and where an easement of this discription is granted for a particular purpose, it does not include a right of way for another purpose (*Cowling* v. *Higginson*, 4 Mees. & Welsb. 245). Thus it was held in *Jackson* v. *Stacey* (Holt's N. P. C. 455), that a right of way for agricultural purposes, that is, to carry corn and manure over the *locus in quo*, did not give the right to carry lime, or the produce of a quarry over it at all times and for all purposes, and in *Ballard* v. *Dyson* (1 Taunt. 279), that a right or way for carriages does not include a way for cattle. A right of way for some purposes, said the court

in *Brunton* v. *Hall* (1 Gale & D. 207), must not be enlarged for other purposes. The defendants, McGee, Maddern & Co. by putting up a sign over the entrance, and signs along the stairway, undertook to make that the chief and principal entrance to the floors above, which was clearly not what was contemplated or intended by the lease. It was to be used to carry ashes and coal and so forth in and out. There is nothing in the words "and so forth" that would embrace the privilege claimed. "And so forth" means "of the like kind" (Worcester's Dictionary). It is equivalent to and has the same meaning as "et cetera" (Cole's Dictionary, 1717; Todd's Johnson Dictionary), in the first of which dictionaries, "*et cetera*" is defined "and so forth," and in the latter, "a common expression denoting others of the like kind."

The decision of the judge at the special term should therefore be affirmed.

Judgment affirmed.