# JOHNSON

*v.*

# THE BALTIMORE & POTOMAC RAILROAD CO.

EQUITY; INJUNCTIONS; NUISANCES; RAILROADS.

1. A suit in equity to enjoin a railroad company from the use of a public reservation in front of complainant's property, and the abatement of its tracks and switches thereon as a nuisance, is not maintainable, whether such use be unlawful or not, unless the operation of the railroad constitutes a plain and palpable nuisance demanding urgent action to save the complainant from irremediable injury.

2. The mere existence of a nuisance does not of itself justify the intervention of a court of equity; in all ordinary cases there is ample remedy at law by way of damages.

3. If a railroad company is in unlawful occupation of public space and thoroughfares, the nuisance is a public one to be abated by the public authorities.

4. Whether the use and occupation of Maryland avenue, between Sixth and Ninth streets, southwest, and public reservation No. 101, in the city of Washington, by the Baltimore and Potomac Railroad Company, are unlawful or not, *quære*.

No. 147. Submitted October 10, 1894. Decided November 19, 1894.

HEARING on an appeal by the complainant from a decree dismissing a bill for an injunction. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit in equity instituted in the Supreme Court of the District of Columbia by the appellant, J. Harrison Johnson, to enjoin the Baltimore & Potomac Railroad Company from the maintenance and use of certain railroad tracks and switches on Maryland avenue, in the city of Washington, adjacent to the appellant's residence, which are claimed by him to be unlawful and to constitute a nuisance.

The appellant is the owner of four lots of ground in square No. 433 in this city, situated at the corner of Eighth and C

streets, which he bought in 1876. In 1878 he built on part of these lots, at a cost of $11,000, a residence for himself and his family, with a frontage of 40 feet on C street; and he has since that time continued to reside therein. In 1879 he built three brick dwellings on another part of the lots fronting on Eighth street, at a cost of over $12,000. The residence of the appellant fronts on an open space caused by the intersection of Maryland avenue and Virginia avenue, similar to other intersections of a like character occurring through the city, and of which most, if not all, have been improved and beautified by their reservation and enclosure as public parks. One of the grievances of the appellant is that this public space, which has been partly improved by the United States, and through which, it is said, no streets now run, would have been wholly improved, if it had not been for the encroachment upon it and its usurpation by the railroad company, as alleged, without warrant of law, and the appellant says that it was in consequence of his expectation that this space would be improved like other similar spaces that he was induced to build his residence at the place indicated. This open space is designated on some of the present maps of the city as Reservation No. 101; but in the original official maps of the city it is not marked as a reservation.

The appellee, the Baltimore & Potomac Railroad Company, is a corporation chartered by the State of Maryland and authorized by several acts of the Congress of the United States to enter the District of Columbia and the city of Washington with its railroad and to exercise its franchise therein. The act of Maryland of May 6, 1853, under which the company was organized, provided that the company should have " all the rights and powers necessary to the construction, working use and repair of a railroad from some suitable point in or near the city of Baltimore . . . to a point on the Potomac River . . . with such branches at any point of the said railroad, not exceeding twenty miles

in length, as the said president and directors may determine; the said road, when completed, not to be more than sixty-six feet wide, except at or near its stations, where the width may be made greater, with as many tracks as the president and directors may deem necessary."

The act of Congress of February 5, 1867 (14 Stat. 387), empowered the company so incorporated to construct a lateral branch of the road into the District of Columbia and to a terminal point in the city of Washington thereafter to be selected upon the presentation of a map of survey by the company to Congress; and it was authorized to exercise in the District of Columbia " the same powers, rights and privileges " which it had under its charter for Maryland. Subsequently the terminal point of the road in the city of Washington was selected at the intersection of South C and West Ninth streets, which the road was to reach by way of Virginia avenue. By one section of this act the company was required to complete the road with at least one set of tracks within four years.

By an act of Congress of June 21, 1870 (16 Stat. 161), the company was authorized to extend its road " by way of Maryland avenue, conforming to its grade, to the viaduct over the Potomac River, at the City of Washington, known as the Long Bridge, and to extend its tracks over said bridge, and connect with any railroad constructed, or that may hereafter be constructed in the State of Virginia." Provision was made in the act that it should reconstruct the Long Bridge and allow any other railroad companies that so desired to pass over the bridge upon such reasonable terms as might be agreed upon.

By an act of Congress of May 21, 1872 (17 Stat. 140), the company was empowered to extend its road from Virginia avenue on Sixth street to B street, where it was permitted to occupy public land and to construct a depot. And it was specifically provided in this act that not more than two tracks should be laid along Sixth street, and that these

should be as close together and as near the center of the street as practicable.

Assuming to proceed under these several enactments, the railroad company in 1872 constructed its track on Virginia avenue across the open space designated in the complainant's bill as Reservation No. 101, to its termination at the corner of Ninth and C streets; and soon afterwards completed its lines of railroad on Maryland avenue to and across the Long Bridge. It laid three tracks in the open space between Seventh and Ninth streets, and in 1885 it constructed there a fourth track; all of which have been continuously maintained and used since they were laid. In the same space there are also eight switches, all of which have been maintained since 1885; and some of them were apparently in existence before that year. The complainant claims that there are six tracks, besides the eight switches; and that all the tracks in excess of two, and all the switches, are unauthorized and unlawful. And he also complains that they are used for the purpose of shifting cars from Maryland avenue to Virginia avenue, to the impediment of travel upon Seventh street, the most busy thoroughfare in that part of the city, and to the frequent detention of the plaintiff, who has occasion to cross on that street from the north of Virginia avenue to the south of it, where his office is located.

In order to reach its station at the corner of Sixth and B streets from Maryland avenue, as well as to go south from this station to Maryland avenue and the Long Bridge, the railroad company has constructed a curve at the corner of Sixth street and Maryland avenue, connecting the tracks on Sixth street with an old track on Maryland avenue, originally laid down by a railroad company operating a railroad between the city of Alexandria, in the State of Virginia, and the city of Washington. This track, which was originally on the north side of the middle of Maryland avenue, has been by the Baltimore & Potomac Railroad Company moved to the south side of that avenue, so as to give a larger curve

for the connection; and this whole track on Maryland avenue between Sixth and Ninth streets the complainant claims to be wholly unauthorized and without warrant of law, as well as the connecting curve.

The history of this track in brief seems to be the following: The Alexandria & Washington Railroad Company, a corporation chartered in the State of Virginia in the year 1854 to construct and operate a railroad between the city of Alexandria and the city of Washington, was authorized by acts of Congress of August 3, 1854 (10 Stat. 810), and March 3, 1863 (12 Stat. 805), to enter the city of Washington over the Long Bridge, and to construct its tracks along the center of Maryland avenue from the bridge to First street west, and thence along First street to Indiana avenue to the depot or station of the Baltimore & Ohio Railroad Company, so as to form a junction with the road of that company, which was at that time the only railroad entering the city of Washington from the North. This road was constructed, and was in operation in the year 1872, when the Baltimore & Potomac Railroad Company entered the city and commenced its operations, as already stated. But about that time all of the track on First street and all on Maryland avenue east of Sixth street was torn up, somewhat lawlessly, it would seem, by direction of some person or persons then in control of the municipal affairs of the city of Washington or of the District of Columbia. The part west of Sixth street was left and was utilized in connection with the operations of the Baltimore & Potomac Railroad Company, under some arrangement between that company and the persons who controlled the Virginia corporation.

The Virginia corporation in the meantime had undergone some mutations. An attempt was made to foreclose its property and franchises in Virginia, a sale was had, and a new corporation was formed under the laws of Virginia, by the name of the Washington, Alexandria & Georgetown Railroad Company, which took possession, as far as it could, of the

property and franchises of the old corporation. All these proceedings, however, were subsequently declared fraudulent, null and void by the courts of the State of Virginia, and the Alexandria & Washington Railroad Company was decreed to be restored to its rights. Whether the organization known as "The Washington, Alexandria & Georgetown Railroad Company" was thereafter abandoned does not appear. It had been recognized by an act of the Congress of the United States of July 25, 1866 (14 Stat. 248), as the lawful successor of the Alexandria & Washington Railroad Company, and as such authorized to make another connection with the Baltimore & Ohio Railroad Company, besides maintaining the connection by way of Maryland avenue and First street. Both by the act of March 3, 1863 (12 Stat. 805), and by the act of July 25, 1866 (14 Stat. 248), the use of steam to propel the cars within the city of Washington was made to depend both on the consent of Congress and that of the corporate authorities of the city of Washington. The consent of Congress was given, however, without limitation as to time; but the corporate authorities of the city of Washington, which at the time constituted a separate municipal organization, authorized the use of steam power on the road within the municipal limits only for the period of twenty years from and after the 24th day of May, 1866. It is contended by the appellant that, if the appellee has the right at all to use the track on Maryland avenue between Sixth and Ninth streets, which he denies, it has not had since the 24th of May, 1886, the right to use steam power thereon.

The burden of the complainant's grievance is threefold: 1st. That the railroad company has no warrant of law to enter the open space designated as Reservation No. 101, or to occupy it in any manner or for any purpose; 2d. That even if it has the right to occupy the space, it has no right to do so with more than two tracks; 3d. That it has no warrant of law for the use of the track on Maryland avenue between Sixth and Ninth streets, and especially for the use

of steam power thereon.   And the special damage which he assigns as accruing to himself from this alleged unlawful obstruction of the public highway and the public property by the appellee is also of a threefold character: 1st. Occasional detention in his attempts to cross the highway; 2d. The annoyance occasioned by the sound and noise emanating from the passing trains, and which are alleged to disturb himself and his family; and, 3d. The dust, smoke, cinders, soot and disagreeable odors that are carried from the passing engines into his residence, to the injury of his residence, furniture and household effects.   And the prayer of his bill is for an injunction to restrain the railroad company from the unlawful occupation of the public reservation and of Maryland avenue, and for the abatement of the tracks and switches thereon as a nuisance.

The answer of the railroad company denies that there is any such reservation as that designated No. 101 ; and avers that its occupation of the streets or avenues and of the open space in question was in accordance with its rights under its charter, and under the several legislative enactments that have been mentioned.   It denies that there is any more emission of noise, or of dust, soot, smoke, cinders or disagreeable odors, than is necessarily concomitant with the lawful use of its road and its lawful operations.   And it claimed to use the track on Maryland avenue under an arrangement with the Alexandria & Washington Railroad Company.

The testimony discloses a considerable amount of annoyance resulting from the operations of the railroad company in the neighborhood of the appellant's residence.   The interruption of travel from the shifting of cars in the manner complained of seems to have constituted a serious obstruction to the public highway; but it seems to have been conceded in argument that this practice has been discontinued and this particular cause of grievance no longer exists.   No special

damage seems to have been shown over and above the annoyances resulting from the ordinary operations of the railroad company; and the burden of complaint is the alleged unlawful occupation of the open space and of Maryland avenue by the company. To this point, indeed, the brief and argument of counsel have been mainly, if not exclusively directed; and it seems to be understood that, unless the occupation of the highway and of the open space in the manner indicated is in itself unlawful, the complainant has no case. And to the decision of this point the opinion of the court below likewise is mainly directed. That court, upon the hearing of the cause, determined that the railroad company's occupation of the open space designated as Reservation No. 101, and of Maryland avenue was not unlawful; and that the complainant showed no special damage accruing to himself that would warrant the interference of a court of equity; and accordingly it dismissed the bill. From the decree of dismissal the complainant appealed to the General Term of the Supreme Court of the District of Columbia, the appeal having been taken before the establishment of this court; and the cause has been transferred to this court under the law of its establishment.

*Mr. J. M. Wilson* and *Mr. Samuel Maddox* for the appellant:

1. There is no warrant of law for shifting cars in the public streets in the process or for the purpose of making up and breaking up trains. The extent to which the appellee company may use the streets of Washington under and by virtue of its several Congressional grants was several times before the Court in General Term. *Baltimore & P. RR. Co.* v. *Neitzey*, 5 Mackey, 34; *Same* v. *Hopkins*, 6 Mackey, 311; *Same* v. *Fitzgerald*, 8 Mackey, 513. In all these cases it was held that making up and breaking up trains and shifting cars in the public streets is an unauthorized usurpation. See also *B. & P. RR. Co.* v. *Fitzgerald*, 2 App. D. C. 501.

2. The appellee company has no right or authority to run

a single engine or car anywhere within the limits of Maryland avenue between Sixth and Ninth streets. This question was before the Supreme Court in *District of Columbia* v. *B. & P. RR. Co.*, 114 U. S. 453, in which case the company claimed the right to depart from the route prescribed by the act of June 21, 1870, and filed its bill to enjoin the District Commissioners from interfering with the exercise of the right thus claimed. The Supreme Court after a full review of all the legislation, denied the application for an injunction, holding that before such departure could be made the permission of Congress must first be obtained.

3. No railroad can now draw trains or cars along Maryland avenue east of Ninth street by steam power. The right so to do given by the corporate authorities of Washington to the Alexandria and Washington Railroad Company expired by express limitation May 24, 1866, and cannot be revived except by Congress.

4. The Alexandria and Washington Railroad Company cannot, without Congressional sanction, license other railroad companies to run trains of cars along Maryland avenue between Sixth and Ninth streets. The grant from Congress to that company provided for running trains between the Long Bridge and the B. & O. depot. The proof discloses that trains are no longer run from Sixth street eastward, the tracks having been removed from that portion of the avenue. No legislative authority for this abandonment of part of its duty to the public is shown. The legal effect of this performance of its duty in part is the forfeiture of its franchise. *People* v. *Railroad Co.*, 24 N. Y. 267.

The rule established both by principle and authority is that a railroad must itself carry on its corporate business and exercise its franchises and perform its duties to the public and the Government, and cannot, without express charter authority, delegate any of its business or duties to any other corporation or person. And it can no more delegate the

exercise of a part of its franchise than it can the entire franchise. The proof discloses that the Alexandria and Washington Railroad Company no longer controls any of the franchises or rights granted it by Congress. The "arrangement" between it and the appellee company is therefore void. *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Railroad Co.* v. *Railroad Co.*, 118 U. S. 290; *Railway Co.* v. *Railway Co.*, 130 U. S. 1.

It appears further that the Alexandria and Washington Railroad Company no longer has any distinct existence, but has been consolidated with another company by an act of the legislature of Virginia. In no one of the acts of Congress giving that company permission to extend its road into the city of Washington is there anything indicating that the privileges granted shall inure to its licensees, or its successors or assigns. The evident purpose of the limitations upon the use of steam power within the city limits was to prevent just what has been attempted here—the conversion of a local road into a trunk line without the consent of Congress; in other words, to create corporate powers by implication, and extend them by construction. This cannot be done. *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 666; *Thomas* v. *Railroad Co.*, 101 U. S. 82; *Mayor* v. *Railroad Co.*, 21 Md. 51; *Railroad Co.* v. *Commrs.*, etc., 21 Pa. St. 22; *Randle* v. *Railroad Co.*, 65 Mo. 25; *Black* v. *Canal Co.*, 24 N. J. Eq. 455.

*Mr. Enoch Totten* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

There are two conditions under which the appellee would be subject to legal liability at the suit of the appellant. First, if the appellee occupied the public thoroughfare and the public space adjacent to the appellant's residence, without warrant of law, and special annoyance and discomfort resulted to the appellant from such occupation over and above the annoyance and discomfort resulting to the public in general, he is entitled to his remedy for the obstruction so far as the

same has become a nuisance to him.   Secondly, if the appellee occupies the public thoroughfare and the public space in question lawfully and with full warrant of authority so to do, but so conducts its operations that they become a nuisance specially injurious to the appellant, the latter is for that also entitled to his remedy.   We concur with the court below in holding that, upon the assumption of the legality of the appellee's occupation in the premises, there is no sufficient proof in this case of unreasonable conduct of its operations by the appellee such as to warrant the intervention of a court of equity by the extraordinary remedy of injunction.   The shifting of cars complained of has now, it is understood, been abandoned.   The annoyance from noise has practically ceased to be an annoyance in consequence of long usage.   And the discomfort from dust, smoke, cinders, soot and disagreeable odors is so slight in comparison with the inconvenience that might result from the issue of a writ of injunction, besides being fully remediable at common law, that a court of equity should hesitate to enjoin it as a nuisance.   Indeed, apart from the question of the unlawful occupation of the public thoroughfare and the public space and the nuisance necessarily resulting therefrom, we do not understand the appellant to insist greatly, if at all, upon the matter of unlawful conduct of its operations by the appellee. And certainly there is no such show of unlawful conduct as would justify the court to seek in this suit to restrain it by injunction.

We do not wish to be understood as intimating that a court of equity may not, in a proper case, restrain the commission or continuance of a nuisance.   It is well settled law that it may and should do so when a proper case is presented for its intervention.   And neither a private nor a public corporation, neither a railroad company under pretense of service to the public, nor a municipal government, nor any agent of government under guise of the public good, can be allowed to perpetrate that which is a nuisance to the individual specially affected by the act, and escape

liability either in a court of equity or in a court of common law. There can be no question of the power of a court of equity to restrain the commission of injury in such cases. *Mississippi, &c., RR. Co.* v. *Ward,* 2 Black, 485 ; *Balt. & Pot. RR. Co.* v. *Fifth Bap. Ch.,* 108 U. S. 317 ; 2 Story's Eq. Jur., Secs. 924–928, and cases cited in notes. If the claim of the appellee in this case to occupy the public ground was in plain and palpable violation of the law, or if its conduct of its operations, lawful or unlawful, was such as to constitute a plain and palpable nuisance demanding urgent action to save the appellant from irremediable injury, a writ of injunction would be an eminently proper remedy, no matter how great the resulting inconvenience might be, either to the appellee or even to the public. A court of equity will not tolerate a nuisance merely because its summary abatement might be an inconvenience to some one else, or to the public in general—although it cannot in reason be admitted that that which is illegal and a nuisance to the individual can be regarded as beneficial to the public. 2 Story's Eq. Jur., Sec. 925, and cases cited in notes.

But the mere existence of a nuisance does not of itself justify the intervention of a court of equity. In all ordinary cases there is ample remedy in the courts of common law by way of damages, and no more in the case of a nuisance than in any other case will a court of equity grant relief unless cause is shown for the exercise of its peculiar jurisdiction. A case of urgency or of irremediable injury must be made out, or one for the avoidance of a multiplicity of suits; or the case must be brought under some other of the recognized heads of equity jurisprudence.

In the case of *Irwin* v. *Dixion,* 9 How. 10, the Supreme Court of the United States, with reference to the matter of obstructions or supposed nuisances on the highway, says that the remedy by injunction is not favored, and would not lie, " unless the injury is not only greater to the complainant than to others, and of a character urgent and otherwise

irremediable at law, but the right or title to raise the obstruction is not in controversy, or is first settled at law." And it adds: " When the right or title to the place in controversy, or to do the act complained of, is, as here, doubtful, and explicitly denied in the answer, no permanent or perpetual injunction will usually be granted until such trial at law is had, settling the contested rights and interests of the parties." And numerous cases are cited in support of the position.

In the case of *Parker* v. *Winnipiseogee, &c., Co.*, 2 Black, 545, where a bill had been filed to abate an alleged nuisance occurring from the attempted diversion of a stream of water, the same court said: " This jurisdiction is applied only where the right is clearly established—where no adequate compensation can be made in damages, and where delay itself would be a wrong. 2 Swanst. 316. The case must be one of strong and imperious necessity, or the right must have been previously established at law. 6 Barb. 160; 7 Barb. 400; 4 B. & C. 8; 37 N. H. 254; 17 Me. 202. The right must be clear and its violation palpable. 6 Barb. 160. If the evidence be conflicting, and the injury doubtful, this extraordinary remedy will be withheld. 3 Paige, 210; 1 Cooper's Sel. Cas. 333; 3 M. & K. 169; 5 Met. 8; 9 G. & J. 668; 3 J. C. 282; 2 Barb. Ch. 282; 1 Dev. Eq. 12." And it added that even " after the right has been established at law, a court of chancery will not, *as of course*, interpose by injunction. It will consider all the circumstances, the consequences of such action, and the real equity of the case. 4 R. I. 301; 8 Eng. L. & E. 217; 9 Eng. L. & E. 104; 18 Eng. Cond., Ch. 436."

Mr. Justice Story, in his work on Equity Jurisprudence, already cited, thus lays down the doctrine: " In regard to private nuisances, the interference of courts of equity by way of injunction is undoubtedly founded upon the ground of restraining irreparable mischief, or of suppressing oppressive and interminable litigation, or of preventing multiplicity of suits. It is not every case which will furnish a right of

action against a party for a nuisance which will justify the interposition of courts of equity to redress the injury or to remove the annoyance. But there must be such an injury as, from its nature, is not susceptible of being adequately compensated by damages at law, or such as from its continuance or permanent mischief must occasion a constantly recurring grievance which cannot be otherwise prevented but by an injunction." Sec. 925.

In view of these authorities, we are unable to find in the record any such showing by the complainant as would entitle him to the extraordinary remedy of injunction. Undoubtedly he has suffered annoyance from the operations of the railroad company, for which he should be compensated in damages. And if the railroad company has occupied the public space and the public thoroughfare without warrant of law, it has committed a nuisance which should be abated, but it is in the first instance a public nuisance to be abated by the public authorities. If the complainant has suffered special injury therefrom, and has, therefore, become entitled to his action for damages, he has neither alleged or proved a case of irreparable injury, or one for which the remedy by way of injunction should be interposed. His case certainly does not seem to be one of urgency when we consider that he waited for several years before he instituted his suit; and that after he instituted it he permitted it to slumber for upwards of a year before he attempted to take any testimony, and for nearly another year before there was any testimony taken for the defendant.

The question of the right of the railroad company to occupy Maryland avenue and the public space between Sixth and Ninth streets in the manner in which it is here shown to occupy it, is one that is open to grave doubt. It is a question that should be settled in some appropriate proceeding instituted for the purpose. But we do not think that we should settle it in the present suit for the reason, as we have intimated, that the complainant has not exhibited a case

that would warrant us in undertaking to settle it here.   We desire to be understood as expressing no opinion upon it.

From what we have said, it follows that, in our opinion, the court below was right in its decision dismissing the complainant's bill; and upon the grounds here stated *we affirm the decree, with costs.*